IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CALDON, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CA 04-1951 |
| | ) |
| ADVANCED MEASUREMENT & | ) |
| ANALYSIS GROUP, INC., and | ) |
| WESTINGHOUSE ELECTRIC | ) |
| COMPANY, LLC, | ) |
| | ) |
| Defendants. | ) |

**Memorandum Opinion**

As we write only for the parties to this litigation, we will dispense with the detailed factual and procedural background. Briefly, Plaintiff Caldon, Inc. ("Caldon") invents, designs, manufactures, and sells ultrasonic measuring devices for industry, including the nuclear power industry. Cameron International Corporation ("Cameron") purchased Caldon's assets on January 3, 2006 and now operates the business as the Caldon Flow Measurement Division of that corporation. One of Caldon's principal product lines is ultrasonic flow meter systems for use in nuclear power plants.

Defendant Advanced Measurement & Analysis Group, Inc. ("AMAG") manufactures a competing line of ultrasonic flow meters, and Defendant Westinghouse Electric Company, LLC ("Westinghouse") markets AMAG's products. Caldon and AMAG are the only two companies who manufacture these flow meters.

Plaintiff has filed this action against the Defendants for unfair competition in violation of the Lanham Act § 43 (a)(2), 15 U.S.C. § 1125 (a), and unlawful attempt to monopolize in violation of the Sherman Antitrust Act, 15 U.S.C. § 2, and seeks treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15 (a).

Before the Court are the parties' proposed protective orders. (Doc. 39 and Doc. 42). The parties agree that there should be a protective order to govern discovery in this case, but disagree as to the designation of material as "Attorney Eyes Only" as well as on whether a party

may designate an employee or former employee as an expert who will then be privy to this information. The parties have taken the basic format of their proposed orders from this court's local rule on protective orders for patent cases, and adapted it to this non-patent case.

Caldon wants to use three individuals as experts or consultants: Calvin Hastings, founder and former CEO of Caldon and Ernest Hauser, Caldon's former senior executive in charge of sales to the nuclear power industry, both of whom are now employed by Cameron, and Herbert Estrada, a consultant to Caldon who is now retired but who continues to act as an outside consultant to Caldon.

Caldon distinguishes between information about **how** a flow meter works (such as design specifications, software codes, internal wiring and circuitry, electronic components, processing methods, and proprietary algorithms), which it agrees should be given Attorney Eyes Only protection, and information about **how well** it works (such as test results and analyses, records of field performance, and information, data and analysis supporting or contradicting claims of accuracy). We note that by a supplemental brief filed as part of its motion to dismiss earlier in this litigation, Westinghouse informed the Court that the AMAG CROSSFLOW UFM remains the subject of ongoing and pervasive regulatory activity by the Nuclear Regulatory Commission and admitted that, contrary to earlier assertions, the NRC has not approved its technology or its accuracy.

Caldon argues that information relating to the **performance** of the flow meters should not be designated as Attorney Eyes Only, and asserts that such information will be sufficiently protected by a designation as "confidential." This designation permits the information to be disclosed to a broader group, including Plaintiffs experts and consultants Hastings, Hauser, and Estrada.

Defendants' Protective Orders are designed to prevent what we will call this "performance" information from being divulged to Hastings, Hauser, and Estrada by designating that information as Attorneys Eyes Only. Westinghouse argues that the parties are

in direct competition with one another in the sale of ultrasonic flow meters, and that much sensitive trade secret data will be exchanged during discovery which could give Caldon a competitive advantage. Defendants also argue that Caldon simply doesn't want to spend the money for an outside expert, and that others are available to fill this role.

## Applicable Legal Standard

Under Rule 26 (c) (7), a protective order may issue to protect trade secrets or other confidential research, development, or commercial information. *Smith v. Bic Corp.*, 869 F.2d 194, 199 (3d Cir. 1989). The party seeking protection bears the burden of showing that it is entitled to the protection being sought. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, n. 16 (1981). A party seeking to protect trade secrets must demonstrate good cause for the order it seeks. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" do not establish good cause. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

In determining good cause, the Third Circuit balances the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. *Pansy*, 23 F.3d at 787.

A district court has wide discretion in weighing any relevant factors and deciding whether to grant a motion for a protective order. *Pansy*, 23 F.3d at 787; *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

## Discussion

Defendants in this case bear the burden of showing why information on the performance of its flow meters should be given the heightened protection it seeks and be designated as Attorney Eyes Only, and why current or former Caldon employees or consultants should not be

3

permitted to see this information in their capacity as experts to the Plaintiff.

In deciding the appropriate scope of a protective order, we are required to balance Caldon's interest in using the experts of its choice and having them have access to Defendants' testing data, against the Defendants' need to protect this information from being known to and used by competitors. We conclude that the Defendants have not shown good cause why their interests will not be protected if such information is designated as "confidential," and have not met their burden of showing why this particular information should be marked Attorneys Eyes Only. They have not shown that a clearly defined and serious injury will result from permitting the access to this information that Plaintiff seeks.

Accordingly, we will enter the protective order proposed by the Plaintiff, in the form attached to Doc. 39 as "Exhibit A," as the protective order in this case.

We are confident that the proposed order addresses Defendants' very real concerns. Plaintiff's proposed order includes provisions designed to prevent the disclosure of confidential or Attorney Eyes Only information, either deliberately or inadvertently, to those not covered by the order. Hastings and Hauser will also agree not to share any confidential information with Cameron or with anyone else employed by Cameron.

While we are sympathetic to Defendants' concern that their trade secrets may used to the advantage of a competitor, we believe, on balance, that Plaintiff should be permitted to pursue its claims and prepare for trial with the experts and consultants it chooses, and we will approve Caldon's proposed protective order. The order we adopt does not permit uncontrolled discovery, since it has safeguards built in to prevent Hastings, Hauser and Estrada from improperly disclosing proprietary information to anyone, including Cameron. Plaintiff's proposed order also distinguishes between information relating to how the AMAG product is designed and operates, trade secrets which will still be protected as Attorney Eyes Only, and a much narrower category of performance-related information, such as testing results. Only the latter cannot be designated as Attorney Eyes Only.

**Conclusion**

We conclude that there is good cause for the entry of a protective order action, and the protective order proposed by the Plaintiff and docketed as Exhibit A to Doc. 39 (39-2 "A") shall be entered as the protective order in this case. The protective order proposed by Defendant Westinghouse Electric Company LLC (Doc. 42) shall be denied.

December 21, 2007
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior United States District Judge

5