IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOCA COMPANY, as successor to
Caldon Company Limited Partnership,

    Plaintiff and Counterclaim Defendant,

v.

WESTINGHOUSE ELECTRIC COMPANY
LLC, and ADVANCED MEASUREMENT &
ANALYSIS GROUP, INC.

    Defendants and Counterclaim Plaintiffs.

Civil Action No. 04-1951

HON. MAURICE B. COHILL, JR.

MAG. JUDGE LISA P. LENIHAN

Filed Electronically

## PLAINTIFF'S RESPONSE IN OPPOSITION TO WESTINGHOUSE'S MOTION TO STRIKE THE TALISMAN REPORT

### INTRODUCTION

The Plaintiff retained the consulting firm Talisman International to assist the Plaintiff with certain nuclear regulatory issues presented by this case. Talisman assigned Thomas Martin, Jared Wermeil, and James Lieberman, all former managerial employees of the United States Nuclear Regulatory Commission ("NRC"), to work with Plaintiff's counsel. These individuals were asked to review documents produced by Westinghouse in this case and the transcripts of the depositions of Westinghouse employees taken in this case, and to address ten specific questions, which are set forth on page 4 of the report as follows:

1) What is the regulatory process for using ultrasonic flow meters for optimizing nuclear reactor output?

2) How are Topical Reports used in the nuclear industry?

3) What is the history of the use of ultrasonic flow meters Topical Reports for reactor power optimization?

4) What is the benefit to Licensees of Westinghouse having an approved Topical Report for the Crossflow Ultrasonic Flow Meter?

5) Under NRC regulations what obligations did Westinghouse have to submit complete and accurate information concerning its Topical Report for the Crossflow Ultrasonic Flow Meter?

6) Are there any NRC requirements that address the deliberate failure to provide complete and accurate information? Would they be applicable to Westinghouse if it learned that information submitted to the NRC concerning its Topical Report for the Crossflow Ultrasonic Flow Meter was inaccurate or incomplete?

7) Did Westinghouse comply with its obligation to provide complete and accurate information to the NRC in all material respects? If not, what information provided to the NRC was inaccurate and incomplete in material respects and did Westinghouse have knowledge that the information was incomplete and inaccurate?

8) If Westinghouse had reason to know that its statements were inaccurate or incomplete (Question 7), did Westinghouse violate 10 CFR 50.5, the NRC Rule on deliberate misconduct?

9) What are your overall views of the significance of Westinghouse communications as to the NRC regulatory process?

10) Was Westinghouse's conduct the cause of the long delay in the NRC investigation of the adequacy of the Topical Report and was the timing of the final NRC resolution within Westinghouse's control?

On July 19, 2010, the final report was submitted to counsel addressing those questions. On July 30, 2010, the Plaintiff filed a Motion for Leave to File an Amended Complaint, to which the Talisman Report was attached as an exhibit.

Westinghouse opposed Plaintiff's Motion to Amend and asked the Court to strike the Talisman Report and those allegations of the proposed Amended Complaint which are based on the findings of the Talisman Report. Plaintiff has since responded to Westinghouse's opposition and Plaintiff's request to amend is still pending before the Court.

On or about January 26, 2011, Plaintiff's counsel received a letter from Westinghouse's counsel claiming that two of the three authors of the Talisman Report (Martin and Wermeil) had committed a criminal violation of the Ethics in Government Act, 18 U.S.C. § 207(a), by participating in the preparation of the Talisman Report. A copy of the letter is attached hereto as Exhibit "A."

Plaintiff's counsel forwarded the letter to Talisman, which in turn submitted to the NRC's Ethics Office a request for a determination that all of the Talisman individuals involved acted properly, and that the NRC had no objection to their providing expert support to the Plaintiff in this case. This request is attached hereto as Exhibit "B."

On February 10, 2010, John L. Szabo, the NRC's Special Counsel for Ethics and Administrative Law issued, on behalf of the NRC, a determination letter concluding that Messrs. Martin and Wermeil did not violate 18 U.S.C. § 207(a) and stating that the NRC had no objection "to these individuals providing expert support" in this litigation. A copy of the determination letter is attached hereto as Exhibit "C."

Thinking that that would be the end of the matter, on February 11, 2011, Plaintiff's counsel sent the Talisman request for determination, along with the NRC's determination letter, to Westinghouse's counsel. The letter concluded:

> "In light of this development I would ask you to withdraw your latest Motion to Strike the Talisman Report, along with the Omnibus Brief, which you filed in support. . . ."

Westinghouse's counsel ignored the letter. Hence this response.

As the following discussion demonstrates, Westinghouse's Motion must be denied because:

   (1)   18 U.S.C. § 207(a)(1) is intended to protect the government and only the government is entitled to seek to exclude expert testimony of former employees.

   (2)   18 U.S.C. § 207(a)(1) only applies in cases in which the government is a party or has a "direct and substantial interest" in. Here, the government is not a party and does not have a "direct and substantial interest" in this case.

   (3)   18 U.S.C. § 207(a)(1) does not apply here because the matters for which the authors of the Talisman Report were retained in this case are not matters in which any of them personally and substantially participated in while employed by the NRC.

# ARGUMENT

Westinghouse's Motion Must Be Denied Because A Private Party Cannot Seek Relief Under The Act And Because The Act Does Not Apply Here

In its latest futile effort to persuade the Court to suppress the Talisman Report, Westinghouse has invoked a statute, 18 U.S.C. § 207(a), known as the Ethics in Government Act (the "Act"), a criminal statute which is intended to protect the United States government,[1] and **not** private parties, from adverse expert testimony given by certain former employees. That portion of the Act relied on by Westinghouse applies only to matters

> "(A) in which the United States . . . is a party or [in which the United States] has a direct and substantial interest. . . ."

18 U.S.C. § 207(a)(1)(A). The Act was initially enacted to prevent government employees from resigning and switching sides. It is intended to prevent a former employee from using knowledge he gained while being paid by the government against his former employer.

The only two cases cited by Westinghouse in its Brief are cases in which the government was a party. In Equal Emp't Opportunity Comm'n v. Exxon Corp., 202 F.3d 755 (5th Cir. 2000), the Equal Employment Opportunity Commission sought to prevent two former EEOC attorneys from testifying for Exxon. The Fifth Circuit held that although the Act applied to the two attorneys, the district court did not err in issuing an order permitting their testimony. The Exxon Court stated the issue before it as follows:

> "Today we decide whether the Ethics in Government Act permits two former government attorneys to act as fact or expert witnesses for a private party **in a suit brought by the government**."
> [Emphasis added].

202 F.3d at 756. Since this is decidedly **not** a case brought by the government, Exxon has no application here.

---

[1] The Statute also gives the same protection to the District of Columbia.

4

The second case cited by Westinghouse is <u>Goodeagle v. United States</u>, 2010 W.L. 3081520 (W.D. Okla. 2010), which involved the proposed testimony of a physician in a medical malpractice case brought by a plaintiff against the United States, arising out of medical services provided to her by the Indian Health Service ("IHS"). The Plaintiff filed an expert report prepared by a physician who had been employed by the IHS at the time medical services were provided to the plaintiff and who had personal knowledge of her treatment. The government moved to strike the former federal employee as a witness. The court held that the witness's expert testimony was barred under 18 U.S.C. § 207(a) since the government was a party, but also held that the witness could in any event testify as a fact witness to facts of which he had first-hand knowledge.

Neither of these cases, of course, applies here because in both, the government opposed the proposed testimony. Here, the government is not even a party and a private party, Westinghouse, is opposing the testimony. Neither of the only two cases cited by Westinghouse in its Brief, therefore, support the proposition that Westinghouse as a private party, may seek relief under 18 U.S.C. § 207(a)(1). Nor does either case support the proposition that the Act applies to this case because the NRC has a "direct and substantial interest" in the matter.

Westinghouse does not even bother to address the first question – whether a private party may seek relief under the Act. In fact, in the only two cases cited by Westinghouse – <u>Exxon</u> and <u>Goodeagle</u> – the private party was offering the proposed expert testimony and it was the government which moved to prevent it.

Likewise, with respect to the second question – whether the Act even applies to this case – Westinghouse has failed to cite a single case in support of its position. While it is true that in addition to cases in which the United States is a party, the Act expressly applies to cases in which the United States "has a direct and substantial interest," Westinghouse has not cited a single case discussing whether such an interest existed within the meaning of the Act. Nor has

5

Westinghouse cited a single case involving the meaning or application of the phrase "direct and substantial interest" in any other context.

One would think that to support a charge as serious as the one made by Westinghouse (18 U.S.C. § 207 is a criminal statute), substantial relevant case law would be cited to the Court. The fact that Westinghouse, with all of the legal resources at its disposal in this case, **could not find a single decided case to support its position** says more than any argument Caldon could make about the frivolous effort Westinghouse is making here to suppress the Talisman Report.[2]

Westinghouse would have a reader of its Brief believe that the phrase "direct and substantial interest" has never before been used in any other decided case and that this is the first case in the history of American jurisprudence in which a federal court has been called upon to find such an interest based on the facts before it.

As it turns out, the phrase "direct and substantial interest" has been frequently used in federal court opinions, in discussing the type of interest required for intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure. See, e.g., Keith v. Daley, 764 F.2d 1265 (7th Cir. 1985) ("the applicant [for intervention] must have a direct and substantial interest in the subject matter of the litigation"); Pennell v. City of Akron, 925 F.2d 941, 947 (6th Cir. 1971) (an intervenor must establish a "direct, substantial interest" in the litigation); Grutter v. Bollinger, 188 F.3d 394, 399 (6th Cir. 1999) (an interest in gaining admission to university was "a direct and substantial interest" sufficient for purposes of Rule 24(a) intervention); Kleissler v. United States Forest Service, 157 F.3d 964, 972 (3d Cir. 1998) ("Timber companies have direct and substantial interests" for purposes of intervention); Sierra Club v. Espy, 18 F.3d 1202, 1207 (5th Cir. 1999) (the required interest for intervention "must be direct, substantial and legally protectable").

---

[2] 18 U.S.C. § 207(a) has been around in substantially the same form for over 50 years. Yet, Westinghouse was unable to find a single case where a private party was permitted to use the Act's provisions to exclude testimony, or where the Act was applied in a case where the government was not a party.

In this Circuit, a "direct and substantial interest" is an interest which will be directly affected in a substantially concrete fashion by the relief sought. Kleissler, 157 F.3d at 972. Here, Caldon is seeking monetary damages against Westinghouse and its co-defendant. Whatever interest the NRC may have in the subject matter of this suit, it will not in any way be affected by the relief sought by Caldon in this case. Nor is there any pending related case in which the NRC is a party which could be affected by any ruling in this case. The NRC, therefore, does not have a "direct and substantial interest" in this litigation, and the Act does not apply here. If the NRC sought to intervene in this case under Rule 24(a), the court would be required to deny intervention because the NRC lacks a direct and substantial interest in this action.

The NRC itself has determined that it lacks a direct and substantial interest in this matter. Under 5 C.F.R. § 2641.201(2), the determination of whether "the United States is a party or has a direct and substantial interest in a particular matter" is left to the agency or component of the United States Government in question. See, 5 C.F.R. §2641.201(j)(2)(ii) ("A component of the United States Government shall determine if it is a party or has a direct or substantial interest in the matter in accordance with its own internal procedures"). The NRC, through John L. Szabo, the NRC's Special Counsel for Ethics and Administrative Law, made such a determination on February 10, 2011, when it issued the letter attached hereto as Exhibit "C" in which Mr. Szabo concluded as follows:

> "Based on discussions with NRC staff and the information you provided, it is my opinion that there is no evidence that the NRC or another Federal entity is a party or has a direct and substantial interest in this case under the determining factors in the post-employment regulations. Therefore, I do not find any evidence that Mr. Martin, Mr. Wermeil, or Mr. Lieberman violated the post-employment law and the NRC has no objection to these individuals providing expert support in the above referenced litigation."

That should certainly be the end of the matter.[3] However, Westinghouse has persisted in the prosecution of its Motion and the Plaintiff would therefore like to make the following additional points.

First, the Plaintiff would point out that 18 U.S.C. § 207(a) is a criminal statute which should be construed strictly. See United States v. Introcaso, 506 F.3d 260, 269 (3d Cir. 2007), cert. den., 552 U.S. 1222 (2008) where the court stated:

> "When a criminal statute's language is unclear, we cannot satisfy ourselves with what we think Congress "more likely" intended without some clear indication of what it actually intended. See United States v. Gradwell, 243 U.S. 476 , 485 (1917) ("[B]efore a man can be punished as a criminal under the Federal law his case must be plainly and unmistakably within the provisions of some statute."); see also United States v. Wiltberger, 18 U.S. 76, 95 (1820) ("The rule that penal laws are to be construed strictly . . . is perhaps not much less old than construction itself."); . . . Smith v. United States, 360 U.S. 1, 9, (1959) (applying the "the traditional canon of construction which calls for the strict interpretation of criminal statutes and rules in favor of defendants where substantial rights are involved," in part to avoid "oppressive and arbitrary proceedings").

506 F.3d at 269 (citations edited for clarity).

Next, the Plaintiff would like to call to the Court's attention several cases which show that restrictions on the ability of employees and former employees to testify in judicial proceedings implicate First Amendment rights.

Laws restricting the right of employees and former employees to give testimony, whether or not they are being compensated, implicates the First Amendment rights of the employee, as well as the corresponding right of the public at large to receive the benefit of competent testimony on matters of public concern. For example, in Hoover v. Morales, 164 F.3d 221 (5th Cir. 1998), the court held that a state law and policy prohibiting professors employed at state universities from providing expert testimony against the state where a conflict of interest existed

---

[3] While this Court may not be bound by the NRC determination, the determination is certainly entitled to great deference since the NRC is disclaiming rather than asserting an interest. Who better than the NRC to decide that it does not have a "direct and substantial interest?"

8

was unconstitutional because it violated the First Amendment rights of the professors. In Schwartzwelder v. McNeilly, 297 F.3d 228 (3d Cir. 2002), Judge Ambrose of this Court declared unconstitutional a Pittsburgh Ordinance prohibiting employees of the Pittsburgh Police Department from providing expert testimony without the approval of the Police Department or DA. The Third Circuit affirmed.

In Conrad v. United Instruments, 988 F. Supp. 1223, 1226 (W.D. Wis. 1997), the court, referring to 18 U.S.C. § 207, said:

> "The court . . . does not endorse the constitutionality of federal laws and regulations which extensively limit the free speech of former employees of the executive branch. . . . While such limitations may protect the confidentiality of the deliberative process . . . they can also silence former employees who seek to expose incompetence and corruption. . . . The extent to which the government may silence its most knowledgeable critics is limited by the constitution."

Of course, statutes implicating constitutional rights should be construed narrowly. See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988), where the court stated:

> Another rule of statutory construction, however, is pertinent here: where an otherwise acceptable construction of a statute would raise serious constitutional problems, the court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.

485 U.S. at 575 (citation omitted).

Some courts have viewed governmental restrictions on the right of former governmental employees to provide expert testimony as an impermissible infringement on the "orderly processes of the court." See FDIC v. Refco Capital Corp., 46 F. Supp. 2d 1109, 1111 (D. Colo. 1999) (where the court appointed the witness as the court's own expert witness and actually enjoined the FDIC from taking enforcement action against expert witness); see also, U.S. ex. rel. Roby v. Boeing Co., 189 F.R.D. 512 (S.D. Ohio 1999) (granting motion for protective order

9

against government interference with expert); Krupp v. U.S., 1999 U.S. Dist. LEXIS (D. Neb. 1999) (denying government motion in limine to prevent expert testimony).

It is clear from these cases that criminal statutory restrictions on the right of an employee or former employee to testify about matters which relate to his employment are not favored, implicate First Amendment rights, and should be narrowly construed and enforced only in the clearest of cases.

The Plaintiff submits that such a narrow construction requires the prohibition on expert testimony to be limited (1) to those cases in which the government's interest is sufficiently direct and substantial to permit intervention as of right by the government under Rule 24(a) and (2) to those cases where the government, as former employer, is seeking to prevent the testimony. Such narrow construction also requires a conclusion that neither Martin nor Wermeil, while employed by the NRC, substantially participated in the matter they have undertaken for Caldon in this case.

Here, Westinghouse states that Martin and Wermeil were "directly and significantly involved" in the NRC's multi-year review of the theoretical basis and technical capabilities of the AMAG CROSSFLOW ultrasonic flowmeter . . . while employed by the Commission." Westinghouse Brief, p. 2. Westinghouse then claims that "[b]ecause of this involvement, section 207(a)(1) permanently bars Messrs. Martin and Wermeil from attempting to influence the NRC or the Court with respect to that review." Id.

However, Martin, Wermeil, et al. were not retained by the Plaintiff to provide advice or testimony concerning the theoretical basis and technical capabilities of the CROSSFLOW device. Rather, they were asked to address ten specific questions, none of which dealt with such technical matters. In fact, the first six questions, which are set forth above at page 1, are general in nature and deal with general policies, practices and requirements of the nuclear regulatory

process. Questions 7 and 8 are questions which were never addressed by the NRC either during the time Wermeil and Martin were there or any time since.

The NRC has never undertaken a determination of whether Westinghouse's communications to it were incomplete or inaccurate within the meaning of 10 C.F.R. § 50.5. Martin and Wermeil, therefore, could not have been directly or significantly involved in such a matter while employed by the NRC. Moreover, they only obtained the information necessary to make such a determination after they left the NRC and reviewed, for the first time, documents and deposition testimony discovered by Caldon in this litigation. How could they possibly know whether Westinghouse's submittals to the NRC were incomplete until they learned, for the first time while working on this case, what information Westinghouse may have had in its possession but may not have disclosed to the NRC?

It is respectfully submitted that when the Act is given the narrow construction required, the Talisman Report does not involve any issue or matter in which Martin or Wermeil participated personally and substantially while employed by the NRC.

## CONCLUSION

As demonstrated above, Westinghouse, as a private party, may not seek to enforce 18 U.S.C. § 207(a), which is intended to protect the interests of the government as a former employer. Second, the Act does not apply here because the NRC is neither a party in this, or any related case, and does not have a direct and substantial interest in this case. Finally, the Act does not apply because Talisman has not been retained in this case to address a matter in which any of its employees were personally and substantially involved while at the NRC. Westinghouse's Motion must therefore be denied.

Respectfully submitted,

PICADIO SNEATH MILLER & NORTON, P.C.

By: /s/ Anthony P. Picadio
    Anthony P. Picadio, Esquire
    Pa. I.D. No. 01342
    Kelly A. Williams, Esquire
    Pa. I.D. No. 74872
    Jason A. Spak, Esquire
    Pa. I.D. No. 89077
    Suite 4710 U.S. Steel Building
    600 Grant Street
    Pittsburgh, PA 15219
    (412) 288-4000
    *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S RESPONSE TO WESTINGHOUSE'S MOTION TO STRIKE THE TALISMAN REPORT was electronically filed and is available for viewing and downloading from the ECF system, and was sent to all counsel of record this 15th day of February, 2011, via electronic service, addressed as follows:

David L. McClenahan, Esquire
James E. Scheuermann, Esquire
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
dmcclenahan@klgates.com
james.scheuermann@klgates.com
*(Counsel for Westinghouse Electric Company, LLC)*

Lindsay Mork, Esquire
Smith Cohen & Mork
Fort Pitt Commons Building
445 Fort Pitt Boulevard, Suite 210
Pittsburgh, PA 15219-1308
lsmork@lawscm.com
*(Counsel for Advanced Measurement & Analysis Group, Inc.)*

PICADIO SNEATH MILLER & NORTON, P.C.

/s/ Anthony P. Picadio

Anthony P. Picadio, Esquire
Kelly A. Williams, Esquire
Jason A. Spak, Esquire