IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOCA COMPANY, as successor to Caldon Company Limited Partnership, | Civil Action No. 04-1951 |
| Plaintiff and Counterclaim Defendant, | HON. MAURICE B. COHILL, JR. |
| v. | MAG. JUDGE LISA P. LENIHAN |
| WESTINGHOUSE ELECTRIC COMPANY LLC, and ADVANCED MEASUREMENT & ANALYSIS GROUP, INC. | Filed Electronically |
| Defendants and Counterclaim Plaintiffs. | |

## PLAINTIFF'S SUR REPLY BRIEF IN OPPOSITION TO WESTINGHOUSE'S MOTION TO STRIKE THE TALISMAN REPORT

## INTRODUCTION

The Plaintiff regrets having to add the following pages of this Sur Reply Brief to the already extensive briefing which has been filed on this issue. However, Westinghouse continues to prosecute its Motion to Strike the Talisman Report and continues to raise frivolous arguments in support of its Motion, which require a response here. The futility of Westinghouse's efforts to suppress the Talisman Report should be apparent by simply reviewing the provisions of 18 U.S.C. § 207(a)(1) and (j)(6) ("the Act") in light of the undisputed facts. For, even under Westinghouse's overly expansive reading of the Act, the Talisman Report may not be stricken. 18 U.S.C. § 207(j)(6) deals with testimony under oath and only precludes certain expert witness testimony. There is no prohibition in that subsection against factual testimony. Therefore, even if Westinghouse's expansive reading of the Act is correct, Martin and Wermeil are free to provide a report and testimony based on their first-hand knowledge. See, e.g., Goodeagle v. United States, No. CV-09-490-D, 2010 WL 3081520, at *2-*5 (W.D. Okla. Aug. 6, 2010). This would include anything they learned while employed by the NRC which might have relevance to this case. They are also permitted to provide factual testimony concerning what they learned first-hand in reviewing

Westinghouse documents produced in **this** case and the deposition testimony provided in this case. Probably 98% of the Talisman Report contains factual information of which the two former NRC employees in question had first-hand knowledge. Under 18 U.S.C. § 207(j)(6) they are absolutely free to provide testimony concerning this factual material. The third former NRC employee, James Lieberman, had no involvement while at the NRC with any CROSSFLOW issues, which Westinghouse concedes. Even under Westinghouse's overly broad construction of 18 U.S.C. § 207(a)(1) and (j)(6), Lieberman[1] is not restricted in any way from providing expert testimony in this case. He is a co-author of the Talisman Report. All of his expert opinions expressed in that Report which he signed are not affected in any way by the Act. There are simply no grounds, therefore, to strike the Talisman Report, even if Westinghouse's broad interpretation to the Act is correct. This should be the end of the analysis and the Motion to Strike should be denied. However, since Westinghouse persists in raising new arguments, Caldon will respond to Westinghouse's specific arguments in the following sections.

## ARGUMENT

### I. The Favorable Ethics Determination Was Not Procured By Fraud

The NRC has issued an ethics determination and stated it has no objection to its former employees providing expert testimony in this case. Westinghouse claims that the NRC's determination was procured by fraud because the NRC was not told all of the material facts. However, the Talisman request for an ethics determination (Exhibit B to Caldon's Response in Opposition to Westinghouse's Motion to Strike the Talisman Report) does disclose all of the important facts that Talisman was free to disclose. Moreover, Westinghouse is certainly free to contact the NRC and provide the facts which Westinghouse claims were withheld and ask whether

---

[1] Westinghouse asserts without any authority that since Lieberman collaborated with Martin and Wermeil his participation as an expert is also precluded. This naked assertion is inconsistent with the Act.

2

those facts change the NRC's position. Until Westinghouse does that the NRC determination should stand.

Finally, Westinghouse, by insisting that the Talisman Report remain sealed in this litigation, has obstructed the NRC's ability to learn all of the facts.

## II. Statements Made By The Authors Of The Talisman Report Are Not Inconsistent With Caldon's Position Here

Westinghouse claims that the authors of the Talisman Report have admitted that the NRC has the required "direct and substantial interest" because they have said that "it is in the public interest for the NRC to promptly review this matter and take the appropriate regulatory actions to ensure that it is obtaining complete and accurate information from the regulated community as it makes its regulatory decisions." Westinghouse's Reply Brief, p. 2. This statement, Westinghouse says, is inconsistent with Caldon's position that the NRC lacks the required direct and substantial interest. But it is not inconsistent. As shown in Caldon's original brief in opposition and below, the phrase "direct and substantial interest" refers to this litigation and describes an interest that can be adversely affected by this litigation. Moreover, since the NRC has never undertaken an investigation of Westinghouse to ensure that the NRC is obtaining complete and accurate information, Martin and Wermeil would not have "personally and substantially" participated in such an investigation and therefore their testimony in this case cannot be restricted under 18 U.S.C. § 207(a)(1).

## III. "Matter" Means This Litigation

The applicable provisions of the Act are in two parts. 18 U.S.C. § 207(a)(1) contains the general restriction and § 207(j)(6) contains the expert witness prohibition which, in relevant part, reads as follows:

> "(6) Exception for testimony. Nothing in this section shall prevent an individual from giving testimony under oath. . . . Notwithstanding the preceding sentence --

3

> (A) a former officer or employee of the executive branch of the United States (including any independent agency) who is subject to the restrictions contained in subsection (a)(1) **with respect to a particular matter** may not, except pursuant to court order, serve as an expert witness for any other person (except the United States) **in that matter**...."

This provision carves out from the general prohibition of subsection (a)(1) a special category of communications for "testimony under oath." It says that subsection (a)(1) does not restrict such communication. However, it then goes on to say that a person otherwise restricted under (a)(1) may not serve as an **expert** witness "in that matter."

The only way this provision makes any sense is if the word "matter" is interpreted to mean the proceeding in which the testimony will be given. It does not say the former employee shall not give expert testimony **about** that matter – it says he or she shall not serve as an expert witness **in** that matter. In normal English usage when we say that he was a witness in that "matter" we are using the word matter to refer to the proceeding in which he testified. Subsection (j)(6), therefore, is using the word "matter" to refer to the proceeding in which the expert testimony will be given. Since "**that** matter" refers back to "particular matter," the term "particular matter" in subsection (j)(6) must be interpreted to mean a particular proceeding.

The words "particular matter . . . **in** which the United States is a party," used in subsection (a)(1) in the context of the prohibition of serving as an expert witness, once again is using the words particular matter to refer to the proceeding **in** which the United States is a party. What else can it mean to prohibit a communication "in connection with a particular matter (A) **in** which the United States is a party. . . ."? Once again, normal English usage of the phrase "matter **in** which the United States is party," in the context of a prohibition of expert testimony, refers to the litigation or other adjudicatory adversary proceeding in which the U.S. is a party and in which expert witness testimony may be given. The phrase "has a direct and substantial interest" refers to the same particular matter as does the preceding phrase "in which the United States is a party." The words

4

"particular matter" must have the same meaning in both cases, i.e., the litigation or adjudicatory proceeding that has parties and in which "testimony under oath" in the form of expert testimony can be given. Thus, the words "particular matter" and "that matter" which are used in subsections (j)(6) and (a)(1), in the context of this case, necessarily refer to this litigation.

IV. **The Talisman Report's Expert Opinions Are Not Adverse To The Government And Therefore Cannot Violate The Act And Westinghouse May Not Obtain The Relief It Is Seeking By Asserting The Government's Interest**

In order for the expert testimony to be precluded under 18 U.S.C. § 207(j)(6) it must be adverse to the government. For the purpose and intent of the Act is to prevent the use of expert testimony by former employees against the government. As the court stated in United States of America v. Nasser, 476 F.2d 1111, 1116 (7th Cir. 1973):

> "[T]he statute is within the classification of a rule of general applicability for the accomplishment of a legitimate legislative purpose. **The purpose of protecting the government** . . . from the use **against it** by former agents of information gained in the course of their agency, is clearly a proper one.
> . . .
> The conclusion underlying § 207(a) before us, that one who, after leaving government employment, acts for another in a matter in which he participated while in such employment, is likely to use **against the government** an advantage gained out of being the government's agent in a common sense conclusion. . . ."

The expert testimony outlined in the Talisman Report is not to be given against the government, but rather against Westinghouse. Thus, it is not the type of expert testimony the Act is intended to prevent. Westinghouse's Motion to Strike the Talisman Report must be denied for this reason alone.

Nor can Westinghouse "piggy back" its way into a claim by asserting the government's interest. The general rule is that a party may not rest a claim for relief on the rights or interests of third parties. Powers v. Ohio, 499 U.S. 400, 410 (1991); Wheeler v. Traveler's Ins. Co., 22 F.3d 534, 538 (3d Cir. 1994). While there are exceptions to this general rule of standing, Westinghouse does not fit into any of them. In order to fall into an exception the third party must be shown to be

5

hindered in protecting its own rights or interests and must share an identity of interest with Westinghouse. Singleton v. Wulff, 428 U.S. 106, 114-15 (1976); Craig v. Boren, 429 U.S. 190, 193-95 (1976). Thus Westinghouse, as a private party, may not enforce the Act in this case.

V. **Westinghouse's Construction Of 18 U.S.C. § 207(a)(1) And (j)(6) Is Unconstitutional**

In assessing the constitutionality of a restriction on a governmental employee's speech, including the right to testify, the court must first determine whether the employee's speech relates to a matter of public concern and, if so, whether the employee's free speech interest outweighs the interests of his public employer in avoiding the adverse consequences of such speech. In an opinion by then Circuit Judge Alito, the Third Circuit not only applied this balancing test but also squarely held that "court testimony . . . is always a matter of public concern." Schwartzwelder v. McNeilly, 297 F.3d 228, 238 (3d Cir. 2002). In Schwartzwelder, the court also said that the restriction on First Amendment rights is significant when applied to opinion testimony ("It is apparent that the regulation of opinion testimony alone imposes a significant burden on First Amendment interests.") Id. Thus, the 18 U.S.C. § 207(a)(1) and (j)(6) restriction on expert testimony constitutes a restriction of speech involving matters of public concern. This restriction can only be upheld if the First Amendment interests of former governmental employees are outweighed by the government's interest as employer in protecting its operations from the adverse impact of testimony from former employees **and** if the Act is narrowly tailored to protect that specific governmental interest. As the Schwartzwelder court said:

> "[I]f the speech relates to a matter of public concern, a court must arrive at a 'balance between the interests of the [employee] . . . and the interest of the state, as employer, in promoting the efficiency of the public services it performs through its employer.'"

Schwartzwelder, 297 F.3d at 235.

The Schwartzwelder court went on to quote from Pickering v. Board of Education, 391 U.S. 563, 571 (1968) as follows:

6

> "The Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government."

Schwartzwelder, 297 F.3d at 236.

Elsewhere, Schwartzwelder says that a statute restricting speech to protect a governmental interest must be "carefully crafted" to serve those interests. Schwartzwelder, 297 F.3d at 238, 240.

Here, the NRC has not only **not** asserted any countervailing interest in protecting its operations from adverse impact, but it has affirmatively stated that it has no objection to its former employees providing expert testimony in this case. Under these circumstances, the "significant burden on First Amendment rights" which the Schwartzwelder court found arose out of a prohibition on opinion testimony has not been outweighed by any asserted interest the NRC, as former employer, may have. To apply the Act under these circumstances would be clearly unconstitutional. The Court can avoid such a result by narrowly construing 18 U.S.C. § 207(a)(1) and (j)(6) to provide a remedy only to the NRC, when, and only when, the expert testimony in issue is being offered **against** the government and the government is opposing it.

## CONCLUSION

For the reasons set forth above, and in Caldon's Brief in Opposition to Westinghouse's Motion to Strike the Talisman Report, it is respectfully requested that the Motion to Strike be denied.

            Respectfully submitted,
            PICADIO SNEATH MILLER & NORTON, P.C.

            By:   /s/ Anthony P. Picadio
                Anthony P. Picadio, Esquire (PA 01342)
                Kelly A. Williams, Esquire (PA 74872)
                Jason A. Spak, Esquire (PA 89077)
                600 Grant Street, Suite 4710
                Pittsburgh, PA 15219
                (412) 288-4000
                *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S SUR REPLY BRIEF IN OPPOSITION TO WESTINGHOUSE'S MOTION TO STRIKE THE TALISMAN REPORT was electronically filed and is available for viewing and downloading from the ECF system, and was sent to all counsel of record this 1st day of March, 2011, via electronic service, addressed as follows:

David L. McClenahan, Esquire
James E. Scheuermann, Esquire
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
dmcclenahan@klgates.com
james.scheuermann@klgates.com
*(Counsel for Westinghouse Electric Company, LLC)*

Lindsay Mork, Esquire
Smith Cohen & Mork
Fort Pitt Commons Building
445 Fort Pitt Boulevard, Suite 210
Pittsburgh, PA 15219-1308
lsmork@lawscm.com
*(Counsel for Advanced Measurement & Analysis Group, Inc.)*

PICADIO SNEATH MILLER & NORTON, P.C.

/s/ Anthony P. Picadio
_____
Anthony P. Picadio, Esquire
Kelly A. Williams, Esquire
Jason A. Spak, Esquire