IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOCA COMPANY, as successor to Caldon Company Limited Partnership, | ) ) ) |
| Plaintiff and Counterclaim Defendant, | ) ) ) ) |
| v. | ) Civil No. 04-1951 ) |
| WESTINGHOUSE ELECTRIC COMPANY, LLC, and ADVANCED MEASUREMENT & ANALYSIS GROUP, INC. | ) ) ) ) ) ) |
| Defendants and Counterclaim Plaintiffs. | ) ) ) |

## MEMORANDUM OPINION ON PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE ORDERS ECF NO. 210 and 224

Plaintiff DOCA Company, as successor to Caldon Company (hereinafter referred to as "Caldon"), has filed an Objection to the Magistrate Judge's Memorandum Order dated February 10, 2011, granting in part Defendant Westinghouse's "Motion to Compel Caldon's Notes on ABB's Alleged Predatory Practices," and the Magistrate Judge's Memorandum Order, dated March 8, 2011, denying Caldon's Motion for Reconsideration of the Order granting the motion to compel. For the reasons stated below we will deny Caldon's Objection, and affirm the Magistrate Judge's Orders.

I.  Background

A Caldon employee created a timeline designed to help counsel understand the background facts of the current lawsuit. This timeline referred to notes for meetings held in November 1998 in which Caldon discussed alleged predatory acts against Caldon by Asea Brown Boveri ("ABB"). ABB is the predecessor to Westinghouse. The timeline is designated

as a privileged document and in the normal course of discovery Caldon would not have produced the timeline. However, the timeline was inadvertently produced during discovery. Eventually Westinghouse relied on the inadvertently produced privileged document as its source for the fact that the 1998 meetings occurred as a basis to inquire of Caldon what was discussed at the 1998 meetings. Caldon refused to answer any questions based on the privileged document containing the timeline, eventually resulting in Westinghouse filing a motion to compel.

## II. Magistrate Judge's Orders

The Magistrate Judge was asked to decide whether Caldon could be compelled to produce non-privileged notes of meetings, or allow Westinghouse to ask questions about the facts underlying the meetings, whose existence was revealed to Westinghouse in a privileged document. After considering the case law cited by Caldon, the Confidentiality Protective Order entered in this case (ECF No. 66), and Federal Rule of Evidence Rule 502, the Magistrate Judge concluded that Westinghouse was "free to develop the existence of the meeting and what occurred through independent means, without inquiring into privileged information." Mem. Order, Feb. 10. 2011, at 6. Accordingly, she granted Westinghouse's motion to compel but only to the extent that Westinghouse "may inquire into the facts relating to Caldon's beliefs concerning ABB's alleged predatory practices on or about the time the meeting notes were created." Id.

Caldon filed a motion for reconsideration in which it set forth additional reasons in support of its argument that Westinghouse is precluded from using its knowledge obtained from the inadvertently produced privileged document that the 1998 meetings occurred to advance its position. Specifically, Caldon requested reconsideration based on Federal Rule of Civil Procedure 26(b)(5)(B), Rule 502, and Rhoades v. Young Women's Christian Association of

2

Greater Pittsburgh, Civil Action No. 09-261, 2009 WL 3319820 (W.D.Pa. Oct. 14, 2009 Ambrose, J.). After considering Caldon's new arguments the Magistrate Judge denied the motion for reconsideration.

Thereafter, Caldon filed its Objection along with a brief in support. Westinghouse filed a Brief in Opposition to Caldon's Objection, to which Caldon filed a Reply Brief. Westinghouse responded with a Sur-Reply Brief in Opposition, to which Caldon filed a Second Reply Brief in Support.

### III.  Standard of Review

As Caldon's Objection concerns the Magistrate Judge's determinations as to a nondispostive pretrial matter we will set aside the determination only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ. P. 72(a); LcvR 72.C.2. Because Caldon argues that the Magistrate Judge's legal ruling misinterpreted or misapplied the applicable law we only consider whether the Magistrate's determination is contrary to law.

### IV.  Discussion

The parties have invested a surprising amount of time and energy in arguing a very narrowly defined issue. The issue is whether a party who inadvertently receives a privileged document is permitted to inquire into underlying non-privileged facts based on a non-privileged fact learned only from the inadvertently produced document. Specifically, for the instant case the issue is: Whether Westinghouse is permitted to inquire into the underlying non-privileged facts about what occurred at the November 1998 meetings in light of the fact that Westinghouse only knew of the meetings from the inadvertently produced privileged document.

Westinghouse has packed its briefs with unnecessary background information and lengthy discourses on the details of counsels' communications about the inadvertently produced

3

document in an apparent attempt to show that Caldon is at fault for its conduct concerning the inadvertently produced document. None of this was addressed as a disputed issue before the Magistrate Judge. The February 10, 2011 Order states:

> There is also substantial argument by Westinghouse in its briefs about whether the notes were identified as privileged and when and how Caldon clawed back the timeline document. At the status conference referenced above, it was the Court's impression that these arguments were no longer being pursued by Westinghouse, and that it wanted the Court to concentrate on the issue of whether any questions could be asked of Caldon about the facts concerning ABB's alleged predatory practices.

Mem. Order, Feb. 10, 2011, 3. In a footnote the Magistrate Judge explained that "Westinghouse asked that its review be limited to this issue and the Court will therefore not address any possible issues as to Rule 502 waiver due to the inadvertent disclosure, reasonable precautions taken regarding the production, timeliness of the clawback, etc." Id. n.2. Thus, because the Magistrate Judge did not address issues concerning Caldon's conduct we ignore the parties' arguments as to these issues.

In addition, Westinghouse submits that it had already crafted discovery requests that should have resulted in Caldon disclosing the fact that Caldon had meetings concerning ABB's alleged predatory practices in 1998. Caldon disagrees that it was required to disclose that fact in response to any of Westinghouse's discovery requests. Again, this issue was not before the Magistrate Judge and we do not address it here.

### A. Caldon's Argument

Caldon's argument is based on the privileged nature of the inadvertently produced document. Caldon argues that Westinghouse would never have learned of the non-privileged fact that the 1998 meetings occurred but for the inadvertent disclosure. Because Westinghouse reviewed a privileged document it should not have, Caldon argues that the CPO, Rule 502, Rule

4

26(b)(5)(B), and case law compel the conclusion that Westinghouse not be permitted to use the "remembered information . . . to advance its case." Pl. Br. Supp. 8.

Caldon's position is that the inadvertently produced privileged document should be treated as if it had never been produced. If one presumes that the document would never have been produced, then the "status quo" is to place the parties in a position as if it had never been produced. If it had never been produced then Westinghouse would not have reviewed it to learn of the 1998 meetings; therefore Caldon argues that Westinghouse should be foreclosed from conducting discovery into a fact is should never have learned.

Caldon distinguishes the present case from a situation where a party seeks underlying non-privileged facts during discovery concerning a fact that also happens to be the subject of a privileged communication as in Upjohn Co. v. United States, 449 U.S. 383, 395-96, 101 S.Ct. 677, 685-86 (1981). Upjohn stands for the principle that facts underlying privileged communications are discoverable. Id. 449 U.S. at 395-96, 101 S.Ct.at 685-86 ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney"; "protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing." (internal quotation and citation omitted)).

Caldon argues that Upjohn is factually distinguishable from the present case because in Upjohn the party seeking discovery of underlying nonprivileged facts had access to other nonprivileged discovery information containing the same fact as the privileged communication. In contrast, in this case "Westinghouse seeks to take information learned solely from a privileged document that it would not otherwise have had and use it to its benefit." Pl. Br. Supp. 14. Moreover, Caldon asserts that during discovery "Westinghouse never once asked a question

5

which would have elicited the information they now seek to obtain until after reviewing Caldon's inadvertently produced privileged document." Id. 2.

### B. Further Inquiry is Appropriate

It is undisputed that the fact that the 1998 meetings occurred is not privileged, although when Caldon communicated that fact to its counsel the communication was privileged. In addition, the Magistrate Judge has determined for the purposes of the instant dispute there is no fault on the part of either party; that is, Caldon has not waived the privilege, and Westinghouse did not act improperly in discovering the fact that the meetings took place. As such, our decision is limited to the present factual circumstances

We begin with Caldon's request that we resolve this matter by treating the situation as if the privileged document had never been inadvertently produced. The difficulty with doing this is that it means that a relevant nonprivileged fact would be off-limits in this litigation. Having non-privileged facts remain hidden during litigation should be disfavored, and because we exercise "broad discretion to manage discovery" we have no hesitation in permitting the inquiry to proceed under the circumstances of this case. Rhoades, 2009 WL 3319820, *4, citing Sempier v. Johnson, 45 F.3d 724, 734 (3d Cir.1995). By permitting Westinghouse to inquire into a relevant non-privileged fact even though it learned of the fact only through an inadvertent disclosure it would unreasonably thwart the ascertainment of the truth.

While the circumstances of this case do not fit squarely within the Upjohn scenario, we conclude that applying the same principles here makes sense. In Upjohn, the Supreme Court explained that a party cannot use a privileged communication to conceal a fact:

> The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."

6

Upjohn, 449 U.S. 383 at 396, 101 S.Ct. at 686, quoting Philadelphia v. Westinghouse Electric Corp., 205 F.Supp. 830, 831 (E.D.Pa. 1962). The consequence of a ruling in favor of Caldon under the facts of this case would be contrary to the admonition that "a party cannot conceal a fact merely by revealing it to his lawyer." Upjohn, 449 U.S. 383 at 396, 101 S.Ct. at 686, quoting State *ex rel.* Dudek v. Circuit Court, 34 Wis.2d 559, 580, 150 N.W.2d 387, 399 (1967).

We see no unfairness to Caldon. It is true that Caldon will now have to respond to discovery requests, but it is hardly unfair that Caldon respond to discovery requests regarding *non-privileged facts*. As the Magistrate Judge recognized the critical aspect of this disputed issue is that it revolves around non-privileged facts. See Mem. Order, Feb. 10. 2011, at 5 (Westinghouse is asking "about the non-privileged facts underlying, or discussed at, the meetings or around the time of the meetings"); Mem. Order, Mar. 8, 2011, at 2, ECF No. 224 ("the fact that a meeting occurred is not privileged information and cannot be protected from discovery simply because it was mentioned in a privileged document"); and id. at 2-3 (Westinghouse "only seek[s] to discover details concerning one fact gleaned from the privileged document, which in and of itself, is not privileged").

In addition, our review of Caldon's briefs shows that Caldon would have complied with a direct question about the 1998 meetings had Westinghouse asked about the meetings prior to the inadvertent disclosure. Caldon complained that Westinghouse is attempting "to take discovery regarding facts that *it could have previously discovered* independently but did not." Id. 5. The problem, Caldon argues, is not that Westinghouse could have learned of the fact during discovery, the problem is that Westinghouse did not ask at all: "Westinghouse did not ask in any interrogatory or at deposition anything about Caldon's suspicions in 1998 or anything similar." Pl. Br. Supp. 6-7. In fact, Caldon has suggested that a proper interrogatory for Westinghouse to

7

pose to Caldon would be: "Identify when [Caldon] first thought Westinghouse (or ABB) might have been engaged in some kind of improper or predatory business practices." Pl. Second Reply. Br. 3.

It does not appear that Caldon's intent is to keep relevant facts from being addressed as its arguments are squarely focused on the privilege aspect. However, for Caldon to concede that it would have had to reveal the existence of the meetings in response to a properly phrased interrogatory, but argue that it does not have to respond because Westinghouse learned of the meetings from a privileged document is very close to an attempt to "refuse to disclose [a] relevant fact within [Caldon's] knowledge merely because [Caldon] incorporated a statement of such fact into [a] communication to [its] attorney." Upjohn, 449 U.S. 383 at 396, 101 S.Ct. at 686

Likewise, it is not apparent that Westinghouse has acted negligently in failing to inquire into when Caldon first thought Westinghouse might have been engaged improper or predatory business practices independently. This is a complex case, and discovery has involved millions of documents and depositions have been taken globally. (We also recognize that Westinghouse believes it has submitted a properly crafted interrogatory.) Nonetheless, the non-privileged fact is now known and permitting further inquiry into it is appropriate.

We understand Caldon's concern that our ruling will now motivate the parties to review privileged documents for non-privileged information and thereafter seek discovery based upon the newly-learned facts. This may occur, but it is unlikely that it will be a common event. First, we think that the Confidentially Protective Order is sufficiently clear that if an attorney (who is also an officer of the Court) receives an inadvertently produced document, he or she will return the document as soon as the privileged nature of the document is known. Again, the present

dispute is the only instance of its kind that has arisen in the course of this lengthy and complex discovery. In addition, relevant facts have a tendency to be brought out during the course of discovery and we suspect that the so-called "hidden" relevant non-privileged fact is rare.

V.  **Conclusion**

We conclude that the Magistrate Judge's determination that Westinghouse's inquiry into non-privileged facts is permitted even though Westinghouse first learned of the non-privileged fact through an inadvertently disclosed document is not contrary to law. Accordingly, the following Order is hereby entered.

AND NOW, to-wit, this 2nd day of June, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Objections to the Magistrate Judge's Memorandum Orders dated February 10, 2011 and March 8, 2011 (ECF No. 225) be and hereby are DENIED. The Magistrate Judge's Memorandum Orders ECF No. 210 and ECF No. 224, be and hereby are affirmed.

/s/ Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.,
Senior United States District Court Judge

9