IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOCA COMPANY, as successor to ) | |
| Caldon Company Limited Partnership, ) | |
| ) | |
|     Plaintiff and ) | |
|     Counterclaim Defendant, ) | |
| ) | |
| v. ) | **Civil No. 04-1951** |
| ) | **UNDER SEAL** |
| WESTINGHOUSE ELECTRIC ) | |
| COMPANY, LLC, and ADVANCED ) | |
| MEASUREMENT & ANALYSIS ) | |
| GROUP, INC. ) | |
| ) | |
|     Defendants and ) | |
|     Counterclaim Plaintiffs. ) | |

## OPINION ON WESTINGHOUSE'S MOTION TO STRIKE TALISMAN REPORT

Defendant Westinghouse Electric Company LLC has filed A Motion to Strike the

Talisman Report. ECF No. 206. Plaintiff DOCA Company, as successor to Caldon Company

(hereinafter referred to as "Caldon"), has filed a Response in Opposition, to which Westinghouse

has filed a Reply. In addition, Caldon has filed a Sur-Reply Brief. For the reasons stated below

we will deny Westinghouse's Motion.

### I.    Background

The Talisman Report is an expert report produced by Talisman International, a consulting

firm retained by Caldon. The Talisman Report was prepared by three former employees of the

United States Nuclear Regulatory Commission ("NRC"). Two of the former employees had

"direct involvement in NRC's review and the NRC decision to revoke NRC's approval of the

Westinghouse/AMAG Crossflow Topical Report in 2007." Def. Ex. 4. According to

Westinghouse, the Talisman Report "concludes that Westinghouse made inaccurate and

incomplete disclosures to the NRC during [the NRC's] review of the AMAG CROSSFLOW UFM in violation of 10 C.F.R. § 50.5, the NRC regulation prohibiting 'deliberate misconduct.'" Def. Br. Supp. 3. Thus, the Talisman Report alleges that Westinghouse engaged in deliberate misconduct in violation of a federal regulation. In addition, the Talisman Report authors deem the alleged misconduct on the part of Westinghouse to be of sufficient public interest that they have requested Caldon to seek leave of Court to unseal the Talisman Report so it can be disclosed to the NRC.

Caldon relies on or refers to the Talisman Report in support of its Motion to Amend Complaint (ECF No. 146) and Motion to Unseal Judicial Records (ECF No. 183). Caldon also relies on the Talisman Report in pursuing the production of certain documents from Westinghouse withheld on the grounds of being privileged.

Westinghouse argues that the creation and submission of the Talisman Report were done in violation of 18 U.S.C. § 207(a)(1) and therefore "should have no role at all in this litigation." Id. 4. Therefore, Westinghouse requests that the court strike the Talisman Report pursuant to Federal Rule of Civil Procedure 12(f), issue an Order disallowing the use of the Talisman Report in various pleadings and motions in which it is relied upon or referenced, and Order that any pleading that refers to the Talisman Report remain sealed.

**II.    Applicable Law**

Section 207 of Title 18 of the United States Code is a criminal statute commonly known as the Ethics in Government Act. The Act restricts the post-employment activities of former government employees. Section 207(a)(1) states as follows:

§ 207. **Restrictions on former officers, employees, and elected officials of the executive and legislative branches**

(a) **Restrictions on all officers and employees of the executive branch and certain other agencies.—**

(1) **Permanent restrictions on representation on particular matters.--** Any person who is an officer or employee (including any special Government employee) of the executive branch of the United States (including any independent agency of the United States), or of the District of Columbia, and who, after the termination of his or her service or employment with the United States or the District of Columbia, knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States or the District of Columbia, on behalf of any other person (except the United States or the District of Columbia) in connection with a particular matter—

(A) in which the United States or the District of Columbia is a party or has a direct and substantial interest,

(B) in which the person participated personally and substantially as such officer or employee, and

(C) which involved a specific party or specific parties at the time of such participation,

shall be [subject to civil and criminal penalties].

18 U.S.C. § 207(a)(1).

The District Court in <u>Adams v United States</u>, 2008 WL 5429801 (D.Idaho Dec. 31, 2008), has explained the statute, and its exceptions, in more plain language as follows:

The Ethics in Government Act permanently bars former Executive branch officers and employees from communicating with, or appearing before, a court "in connection with a particular matter" in which the Government has a "direct and substantial interest," the "person participated personally and substantially as such officer or employee," and "which involved a specific party or specific parties at the time of such participation." See 18 U.S.C. § 207(a)(1). An exception to this prohibition applies for a person "giving testimony under oath, or ... making statements required to be made under penalty of perjury." <u>Id.</u> at § 207(j)(6). But in an exception-to-the-exception, the Act provides that any person falling within

subsection (a)(1) "with respect to a particular matter may not, except pursuant to court order, serve as an expert witness for any other person ... in that matter."

2008 WL 5429801, at *2. The <u>Adams</u> Court went on to explain that the Court's "initial inquiry is whether [the former employee] falls within subsection (a)(1) and is permanently prohibited from communicating with or appearing before this Court." <u>Id.</u> at *3. "However, even if the subsection (a)(1) applies, [the former employee] would still be allowed to testify under oath or make statements subject to a penalty of perjury [under § 207(j)(6)], unless he was testifying as an expert, in which case he would need a court order to be entitled to the statutory exception from liability." <u>Id.</u> The <u>Adams</u> Court assumed without deciding that the former employee was subject to the permanent prohibition and was testifying as an expert, but nonetheless permitted him to testify pursuant to a Court Order because he was a critical witness whose absence would cause major problems. <u>Id.</u> at *3-*4.

## III.    Discussion

For the reasons that follow we will deny Westinghouse's motion to strike. Although this is a somewhat lengthy opinion we do not think the resolution of the issue is difficult. As explained below, the NRC itself sees no violation of section 207(a)(1) here. In addition, it is otherwise difficult to fit this case within the requirements of the statute where the United States, through the NRC, is not involved and in which the United States is not seeking to prohibit the Talisman Report. However, as both parties have noted there is little case law concerning this statute, and thus it is certainly possible that a dispute such as this may fall within section 207(a)(1)'s purview. Therefore, we will perform an analysis under the statute.

Initially, we will consider Caldon's argument that Westinghouse, as a private party, is unable to seek the relief it requests based on 18 U.S.C. § 207(a)(1). Next, we will address the NRC's nonbinding letter expressing the opinion that there is no violation of the statute and that

4

the NRC has no objection to Talisman offering expert support in this litigation. We then turn to consideration of the statute itself. In order for the Talisman employees to fall within subsection (a)(1), we have to determine, among other things, that the communication (*i.e.*, the Talisman Report) is "in connection with a particular matter— (A) in which the United States . . . is a party or has a direct and substantial interest." 18 U.S.C. § 207(a)(1)(A). Since neither the United States nor the NRC is a party, this requires us to determine what the "particular matter" is and whether the NRC "has a direct and substantial interest" in that "matter." Finally, we will also briefly discuss how this case does not satisfy the requirements of the statute concerning "intent to influence" and involving "specific parties."

### A. Private Parties

Caldon submits that the Ethics in Government Act is intended in part to protect the United States from adverse expert testimony offered by certain former employees, and that it is not intended to protect private parties. Pl. Resp. 4. Westinghouse's response is that it is not seeking relief under section 207(a)(1), but is instead seeking evidentiary relief pursuant to a Rule 12(f) motion to strike. Westinghouse's argument, however, depends entirely on a determination that there is a violation of section 207(a)(1), as that is the basis for Westinghouse's request to strike the Report.

We have found no case that discusses this issue and we are uncertain that Westinghouse's approach is proper. Westinghouse points to Goodeagle v. United States, 2010 WL 3081520 (W.D.Okla. Aug. 6, 2010), for the proposition that section 207(a)(1) can be applied in a civil case to preclude expert testimony by a former government employee. Goodeagle is not entirely on point. Although Goodeagle is a civil case, the former government employee's expert testimony in that case was offered *against* the United States and it was the United States who

sought to exclude the testimony. Id. at *1-*2. In this civil case the expert testimony is being offered against a private party, Westinghouse, and the United States is not seeking to exclude the testimony.

The Goodeagle case involved medical treatment provided to a patient at a government hospital, and the subsequent medical malpractice lawsuit alleging negligence relating to that treatment. Id. at *1. The former government employee in Goodeagle was a physician who, while working for the Indian Health Service, "was involved in [plaintiff's] treatment . . . , and he ha[d] direct knowledge of the facts concerning [plaintiff's] medical condition, the treatment provided on February 16, 2008, and the physicians providing that treatment." Id. at *3. In the subsequent medical malpractice lawsuit the former government physician prepared an expert report and was planning to offer expert testimony on behalf of the plaintiff concerning the treatment plaintiff received. Defendant United States moved to strike the physician's testimony on the basis that he was a former employee and that the testimony was being offered against the United States in violation of section 207(a). The Goodeagle court held that the physician's expert testimony was prohibited under section 207(a) (but nonetheless ruled that the physician could testify as a fact witness to facts of which he had firsthand knowledge). Id.

We have found no similarly situated case where a private party sought to exclude adverse expert testimony offered by former government employees on the basis that the proposed testimony is in violation of section 207(a)(1), and where the United States is neither a party to the civil action nor has moved to prohibit the testimony itself. Even assuming that section 207(a)(1) would apply to the Talisman Report, it is not clear that Westinghouse could exclude the testimony on that basis alone. Because of the lack of case law in this area we will analyze section 207(a)(1) as applied to the instant case in order to determine whether the Talisman

6

Report and related testimony concerns a "particular matter" in which the United States has a "direct and substantial interest." However, in accord with the statute we note that our analysis depends on whether the *United States*, not Westinghouse, has a direct and substantial interest in the particular matter.

### B. The NRC Letter

When Westinghouse first communicated to Caldon that it thought that the Talisman Report was prepared in violation of the Ethics in Government Act, Caldon relayed these concerns to Talisman. Talisman prepared a letter entitled "Request for a Determination by the Designated NRC Ethics Official," dated February 4, 2011. Ex. B to Pl. Reply. In the letter Talisman requested a determination "that the NRC does not have a 'direct and substantial' interest' in the matter for which Talisman has been retained by Caldon and that the NRC does not object to any of the Talisman personnel . . . providing expert testimony in the litigation." Id. at 3.

Talisman begins its letter to the NRC as follows:

Talisman has been engaged by counsel for Caldon to provide expert support to them in an ongoing antitrust and unfair competition lawsuit against Westinghouse/AMAF. One of the issues involved is related to NRC's approval and subsequent disapproval of the Westinghouse CROSSFLOW ultrasonic flow meter. Neither the NRC nor any other government agency is involved in this lawsuit.

Id. at 1. Talisman's support was described as being asked to "review the documents that had been provided to Caldon in discovery and to provide an expert report evaluating the completeness and accuracy of the communications between Westinghouse and the NRC." Id. The timeframe of the review was "the period prior to the submittal of the initial Topical Report to the NRC for approval up until the NRC decision to withdraw its approval in 2007." Id. Talisman then explained:

Based on the documents received, Talisman prepared an Expert Report that expressed an opinion on the completeness and accuracy of the information that had been provided to the NRC by Westinghouse and identified the potential consequences if the NRC staff had known what we learned during our review. Caldon's counsel has provided that report to Westinghouse's counsel and to the presiding Judge in its Motion for Leave to File an Amended Complaint, submitted on July 30, 2010. The Talisman expert report is confidential and the record in this proceeding is sealed by court order.

Id. at 2.

John L. Szabo, Special Counsel for Ethics and Administrative Law at the NRC, responded by letter dated February 10. 2011. Ex. C to Pl. Reply. Mr. Szabo noted that the opinion in the letter "is based on the information [Talisman] provided, including [Talisman's] summary of the facts. The opinion may change if the facts are not as represented in your information." Id. at 1. Mr. Szabo noted that "NRC technical and legal staff informed me that they do not expect that this litigation would result in any NRC actions, nor would the litigation have any other effect on the NRC or, to their knowledge, on any other entity of the United States Government." Id. He provided his opinion as follows:

Based on discussions with NRC staff and the information you provided, it is my opinion that there is no evidence that the NRC or another Federal entity is a party or has a direct and substantial interest in this case under the determining factors in the post-employment regulations. Therefore, I do not find any evidence that Mr. Martin, Mr. Wermell, or Mr. Lieberman violated the post-employment law, and the NRC has no objection to these individuals providing expert support in the above referenced litigation.

Id. at 2.

The NRC opinion is persuasive, but is not binding on the Court. Caldon provided the NRC opinion letter to Westinghouse believing it might prompt Westinghouse to withdraw its motion to strike. Instead, Westinghouse asks the Court to find the NRC opinion letter as "invalid." Def. Reply 6. Westinghouse contends that the NRC opinion was "based on a materially misleading and knowingly incomplete recitation of the facts," and that Talisman

"intentionally misled" the NRC ethic officer by providing a "deceptive statement of facts." Id. at 2.

Despite the hyperbole, Westinghouse's complaint is that Talisman did not inform the NRC ethics officer that the Talisman Report concludes that Westinghouse engaged in deliberate misconduct in violation of 10 C.F.R. § 50.5, that the Talisman Report authors believe it is in the public interest that the NRC review the alleged misconduct, and that the authors have requested Caldon to ask this Court to permit Talisman to communicate this information to the NRC. Of course, because the Talisman Report is sealed and confidential, Talisman was unable to communicate this information to the NRC.

Nonetheless, Westinghouse urges us to ignore the NRC opinion because if the NRC had known the above information then the NRC would have realized that it does in fact have a "direct and substantial interest" in this matter. We disagree.

Initially, we note that Talisman's request for a determination was clear, albeit in general terms, in describing the Report's opinion and consists of sufficient information for the Court to find the NRC opinion to be persuasive. Talisman told the NRC that the Report "expressed an opinion on the completeness and accuracy of the information that had been provided to the NRC by Westinghouse and identified the potential consequences if the NRC staff had known what [the Talisman Report authors] learned during our review." Ex. B. 2. We expect that the NRC's Special Counsel for Ethics and Administrative Law, with the assistance of the NRC technical and legal staff, was able to determine that the Talisman Report's opinion might be that the information that had been provided to the NRC by Westinghouse was incomplete and inaccurate. Likewise, the NRC ethics officer was fully capable to extrapolate from a conclusion that Westinghouse did not provide complete and accurate information to the NRC that it might mean

9

that Westinghouse engaged in misconduct. We find that the fact that the NRC ethics officer determined that the NRC did not have direct and substantial interest in the matter to be persuasive and in accord with our above analysis.

Moreover, as explained below we do not believe that the "matter" of the NRC's review of the AMAG CROSSFLOW UFM is the same "matter" as the subject of this litigation. Westinghouse's concern here is not to ensure that the NRC possessed "all material facts" of the Talisman Report. Def. Reply 6. To the contrary, Westinghouse does not want the information in the Talisman Report known. However, if the NRC was informed of all the material facts, we still would not find a "direct and substantial interest" and we think it unlikely that the NRC would either. As just explained, we believe the NRC is fully capable of figuring out that the Talisman Report might have negative information in it about Westinghouse. If the NRC was explicitly told that the Report alleges deliberate misconduct on the part of Westinghouse we fail to see how that would affect the NRC's *past* review of the AMAG CROSSFLOW UFM. Instead, as explained, if anything it would spark an entirely new investigation, and hence a new "matter" under the statute.

We reiterate that the Talisman Report is not being offered against the NRC; it is being offered against Westinghouse. In Westinghouse's opening paragraph of its Reply Brief, it reveals that the Talisman Report has dire consequences for Westinghouse, not the NRC:

> Together, the Talisman Report and its Cover Letter are an advocacy piece calculated to attempt to establish a claim of fraud-on-the-NRC and, coupled with Caldon's Motion to Unseal Judicial Records filed shortly thereafter, to bring about NRC and DOJ investigations of Westinghouse. Threatening to cause such government activity, or extracting an early and inflated settlement from Westinghouse based on the specter of that activity, can be Caldon's only purposes in providing the Talisman Report and its Cover Letter to Westinghouse nearly a year in advance of when they would otherwise be due.

Def. Reply 2. Thus, it is Westinghouse not the NRC that would be affected by the Talisman

Report. Under the guise of protecting the NRC, Westinghouse seeks to strike the Report as a violation of 18 U.S.C. § 207(a)(1); even though it is Westinghouse who would be protected if the Report is stricken.

As for Westinghouse's characterization, we cannot say that there is any nefarious purpose in Caldon providing the Talisman Report "early." In addition, there is nothing wrong with a party seeking to amend a Complaint to add new claims based on newly discovered evidence in discovery. The Amended Complaint is based on documents Caldon did not have access to prior to discovery in this case. It is proper for a party to attach supporting documentation in furtherance of a motion to amend a complaint that adds new claims based on the newly discovered documents. Caldon chose to support its motion with the Talisman Report, which appears to be the best evidence to support the new claims. We cannot say if Caldon's purpose is to extract a settlement, but it is common in litigation that an adverse discovery will play a part in each party's settlement strategy.

As far as the so-called threat to cause government activity, we likewise see no misconduct or inappropriate behavior by Caldon or the Talisman Report authors. The authors appear to be well-qualified experts who have great familiarity with the issues in this litigation. The fact that they are all former NRC employees and that two of them were involved in the NRC review of the AMAG CROSSFLOW UFM adds to the weight of their opinion. Thus, it appears to be appropriate that, if after reviewing the relevant documents and coming to the opinion that Westinghouse engaged in deliberate misconduct towards the NRC, the Talisman Report authors feel that it is their duty to notify the NRC. We note that it is only because these matters are sealed that the Talisman Report authors were not at liberty to disclose this information on their own. The fact that they are required to seek leave of Court before they can disclose the

information cannot properly be characterized as a "threat" as it seems apparent that if they could have, the Talisman Report authors would have immediately conveyed the information to the NRC.

Accordingly, we find that the NRC opinion that there is no evidence that the NRC is a party or has a direct and substantial interest in this case, that the Talisman Report authors have not violated section 207(a)(1), and that the NRC has no objection to Talisman providing expert support in this case to be highly persuasive evidence in support of denying Westinghouse's motion to strike. With this in mind we turn now to an analysis of section 207(a)(1) as applied to this case.

### C. "Particular Matter"

Westinghouse contends that the NRC's review of the AMAG CROSSFLOW UFM is the same "particular matter" that is the subject of the Talisman Report. Def. Br. Supp. 8-13. Westinghouse reasons that since the Talisman Report "re-evaluates each of the major components of [the NRC's] review and concludes that certain communications made by Westinghouse to the NRC about the AMAG CROSSFLOW UFM were inaccurate or incomplete based on information known by Westinghouse at the time those communications were made" they share a "common nucleus of operative facts" and are therefore "the same 'particular matter.'" Id. 9-10, 13, citing EEOC v. Exxon Corp., 202 F.3d 755, 757 (5th Cir. 2000); Goodeagle, 2010 WL 3081520, *2-*3.

Westinghouse explains that "in Exxon, two distinct lawsuits were found to constitute a single 'particular matter' because they involved substantially overlapping facts." Def. Br. Supp. 9. citing Exxon, 202 F.3d at 757. Similarly, Westinghouse explains that in Goodeagle "medical treatment provided to a patient at a government hospital and a subsequent medical malpractice

lawsuit alleging negligence relating to that treatment were viewed as the same 'particular matter.'" Def. Br. Supp. 9, citing <u>Goodeagle</u>, 2010 WL 3081520, *2-*3.

In response, Caldon argues that under section 207 the proper "particular matter" at issue here is simply the present antitrust and unfair competition lawsuit filed against Westinghouse and AMAG in which Caldon seeks monetary damages. Pl. Sur-Reply 3-5. Caldon examines the language of subsection (a)(1)(A) and the exception subsections (j)(6)and (j)(6)(A) to conclude that that the "particular matter" referred to in the statute must mean the present litigation as described above. <u>Id.</u> Therefore, because the NRC's review of the AMAG CROSSFLOW UFM is not the same "particular matter" as the instant lawsuit, Caldon argues that the statute is inapplicable.

We agree with Caldon. The relevant two "matters" to compare to determine whether they constitute the same "particular matter" for purposes of the statute are the NRC's review of the AMAG CROSSFLOW UFM and the instant litigation. Westinghouse's focus of comparison on the Talisman Report is too narrow as can be shown by examining the cases relied upon by Westinghouse.

The <u>Exxon</u> case concerned Exxon's substance abuse policy and whether it violated the Americans with Disabilities Act. Exxon had retained two former government attorneys as fact and expert witnesses who were "involved in the prosecution and settlement of the Valdez matter." 202 F.3d at 756. As part of its defense, Exxon proposed to have the former government attorneys testify as to "the events leading up to Exxon's settlement with the government, as well as the potential legal consequences to Exxon if it abandoned its substance abuse policy and another accident occurred." <u>Id.</u> The <u>Exxon</u> Court applied the Seventh Circuit's standard for determining when two matters are the same "particular matter," which "requires the same

specific parties, subject matter, and 'substantially' overlapping facts." Id. at 757, citing United States v. Medico Indus., Inc., 784 F.2d 840, 843 (7th Cir.1986). The Court found that both the prior Valdez settlement with the government and the current EEOC versus Exxon ADA lawsuit were the same "particular matter" because both matters "involve the federal government and Exxon, and each deals with Exxon's substance abuse policy." 202 F.3d at 757.

The Goodeagle case, the facts of which we discussed above, is straightforward in regards to section 207(a)(1)'s "particular matter" clause. It is uncontroversial that both the medical treatment provided to plaintiff at the government hospital and the subsequent medical malpractice lawsuit in which the issue concerned the treatment plaintiff received at the government hospital by the United States were the same "particular matter." Both matters involve the federal government and the plaintiff, and both matters concern plaintiff's medical treatment at the hospital. See Exxon, 202 F.3d at 757.

Unlike Exxon and Goodeagle, the government, i.e. the NRC, is not a party to the instant lawsuit. In addition, neither Court focused on the former government employees' testimony as the "matter" to compare with the prior Valdez settlement (Exxon) or plaintiff's prior medical treatment (Goodeagle). Instead both Courts took as comparison the substantive current litigation *in which* the testimony was being offered and in which the testimony was being offered *against* the United States. Thus, these cases are distinguishable from the instant case.

We find that the proper comparison to the NRC's review of the AMAG CROSSFLOW UFM is not the former NRC employees' Report and testimony, but the current Caldon versus Westinghouse and AMAG lawsuit. Therefore, we conclude that the NRC's review of the AMAG CROSSFLOW UFM is not the same "particular matter" as the present antitrust and unfair competition lawsuit filed against Westinghouse and AMAG in which Caldon seeks

14

monetary damages. Thus, the Talisman Report occurs "in connection with" the instant litigation. Therefore, for section 207(a)(1) to apply we must find that the NRC has a "direct and substantial" interest in this litigation.

### D. "Direct and substantial" Interest

Caldon argues that the NRC does not have a direct and substantial interest here because Caldon seeks monetary relief only from Westinghouse and its codefendant. Pl. Resp. Opp. 7. Whatever the outcome of the instant case, Caldon argues, it will not affect the NRC. Id. In addition, there is no related case in which the NRC is a party that might be affected by the outcome of the present case. Id. Westinghouse does not address this argument, thereby conceding that the NRC does not have a "direct and substantial" interest in this litigation. Instead, Westinghouse argues that Caldon is wrong about the "particular matter" being the instant litigation and therefore its argument focuses on whether the NRC has a "direct and substantial interest" in the NRC's review of the AMAG CROSSFLOW UFM.

Westinghouse argues that the NRC has a "direct and substantial interest" because if the Talisman Report is permitted in this litigation "the integrity and fairness of the NRC's technical review of the AMAG CROSSFLOW UFM will be placed in serious doubt and the impartial NRC regulatory process will be undermined." Def. Br. Supp. 16. More specifically, Westinghouse explains that the NRC's interest is "in ensuring that its review of the theoretical basis and technical capabilities of the AMAG CROSSFLOW UFM was conducted properly, with knowledge of all facts material to its regulatory decision relating to the meter and by reviewers who were impartial in fact and in appearance." Id.

Westinghouse also argues that the NRC has a direct and substantial interest in "ensuring that Westinghouse and other regulated parties do not lose confidence in the regulatory process because supposedly impartial NRC employees are perceived as potential adversaries in the future." Id. at 17. In addition, Westinghouse argues that NRC's interest extends to "carrying out its independent regulatory role and avoiding even the appearance of unethical and illegal conduct by these former NRC employees and those who aided and abetted them." Id. at 18. Finally, since the NRC is not a party to this action, Westinghouse argues that the NRC has a direct and substantial interest "in retaining sole jurisdiction over the question of whether its regulations have been violated." Id. at 19.

Underlying Westinghouse's argument as to why the introduction of the Talisman Report might cause all these various deleterious effects is because the Talisman Report, in part, alleges that Westinghouse engaged in deliberate misconduct and allegedly committed fraud on the NRC in violation of 10 C.F.R. § 50.5, and that the authors of the Report deem the alleged misconduct on the part of Westinghouse to be of sufficient public interest that they requested counsel to ask the Court's permission to disclose the Report to the NRC.

We disagree with Westinghouse's' analysis. Assuming that the "particular matter" is the NRC's review of the AMAG CROSSFLOW UFM, we fail to see how the NRC has a direct and substantial interest in that matter in this case. This Court is not resolving a disputed matter about the NRC's review and the NRC is not a party to this action defending its 2007 review. Even if this Court were ruling in some way on the matter of the NRC's review, it is insufficient to qualify as a direct and substantial interest. See 5 C.F.R. § 2641.201(j)(2) ("The United States is neither a party to nor does it have a direct and substantial interest in a particular matter merely because . . . a Federal court is serving as the forum for resolution of the matter").

16

Moreover, the NRC's review was completed in 2007. We are not aware of any pending

litigation in which the NRC is involved that concerns its review of the AMAG CROSSFLOW

UFM. In this regard, Example 1 to paragraph (j) of section 2641.201 is instructive. The

example, with the pertinent language emphasized, states as follows:

> An attorney participated in preparing the Government's antitrust action
> against Z Company. After leaving the Government, she may not represent Z
> Company in a private antitrust action brought against it by X Company on the
> same facts involved in the Government action. Nor may she represent X
> Company in that matter. The interest of the United States in preventing both
> inconsistent results and the appearance of impropriety in the same factual matter
> involving the same party, Z Company, is direct and substantial. *However, if the
> Government's antitrust investigation or case is closed, the United States no longer
> has a direct and substantial interest in the case.*

Example 1, to 5 C.F.R. § 2641.201(j)(emphasis added).

If the government prepares a case against a company, an attorney who worked on that

case cannot simply leave government and represent the company in the same action. In

addition, as this example shows, the attorney also cannot leave government and represent as

plaintiff's counsel the company as it pursues its own private civil action against a defendant

company based on the same facts as in the government's case against it. Finally, the attorney

also cannot leave government and choose to represent the defendant company in that action.

The example clearly states the rationale for this prohibition: to prevent inconsistent

results and to prevent the appearance of impropriety in the same factual matter involving the

same party. The final sentence implies that the prohibitions just stated are only applicable while

the government's action against the company is pending. While the example is not perfectly

analogous since it posits an attorney's representation of parties, the closing sentence shows that

the NRC's direct and substantial interest may end once a particular matter is closed. 5 C.F.R. §

2641.201(j)( "if the Government's [] investigation or case is closed, the United States no longer

has a direct and substantial interest in the case"). Here, the NRC's review has ended and so has any direct and substantial interest it may have had in the matter.

Moreover, the example assumes that both the government's action against Z Company, and Z Company's action against X Company, are based on the same facts. The same is not true of the present litigation. The NRC's review of the AMAG CROSSFLOW UFM is not based on the same facts as Caldon's action against Westinghouse and AMAG. The NRC review concerns the NRC's approval and subsequent disapproval of the CROSSFLOW ultrasonic flow meter pursuant to the NRC's own practices and procedures. The instant litigation concerns antitrust and unfair competition allegations asserted against Westinghouse.

In pursuit of its claims Caldon has retained experts who prepared a report that expresses an opinion on the completeness and accuracy of the information Westinghouse provided to the NRC, and further opines on what might have occurred at the NRC had the NRC had available for its review the material the experts reviewed. When viewed in this light we are hard-pressed to continue with our assumption that the "particular matter" here is the NRC's review of the AMAG CROSSFLOW UFM. We cannot see how the NRC has a direct and substantial interest in a review it has completed, nor can we see how the NRC has a section 207(a)(1) "direct and substantial interest" in its closed review simply because an expert relies in part on documents the NRC *never* examined to opine about whether the NRC received complete documentation in the past. It seems clear that it is Westinghouse who has a direct and substantial interest in the opinions expressed in the Talisman Report that allege that its conduct before the NRC was improper.

If Westinghouse's worst fears came true and the NRC opened an investigation into Westinghouse based on the allegations in the Report we do not see how that translates into a

18

section 207(a)(1) violation on the part of the Talisman employees. Any investigation by the NRC would be a new investigation. Insofar as the investigation would look to the NRC's past review of the AMAG CROSSFLOW UFM it would necessarily be because the NRC had discovered information unavailable to it at the time.

### E. "Intent to Influence" and "Specific Parties" Requirements

We will briefly address the "intent to influence" and the "specific parties" requirements of section 207(a)(1), as issues that also make it difficult to fit the circumstances here within the statute.

### 1. Intent to Influence

One of the elements that must be present in order to find a violation of section 207(a)(1) is that the former government employee makes a communication with the "intent to influence." The applicable regulation provides as follows:

> (e) With the intent to influence--
> (1) Basic concept. The prohibition applies only to communications or appearances made by a former Government employee *with the intent to influence the United States*. A communication or appearance is made with the intent to influence when made for the purpose of:
> (i) Seeking a Government ruling, benefit, approval, or other discretionary Government action; or
> (ii) Affecting Government action in connection with an issue or aspect of a matter which involves an appreciable element of actual or potential dispute or controversy.

5 C.F.R. § 2641.201(e)(1) (emphasis added). Westinghouse argues that the Talisman Report, through the filings in this case, is made with the "'intent to influence' the *proceedings in this lawsuit* within the meaning of 18 U.S.C. § 207(a)(1)." Def. Brief in Supp. 8 (emphasis added). Without deciding the question it is the Court's opinion that the statute, the applicable regulations, and the case law do not support a conclusion that the object of the intention to influence is the "proceedings in this lawsuit."

19

It appears that Westinghouse is arguing that the Talisman Report is submitted in this case with the intent to influence the Court to render a ruling in favor of Caldon. We do not think that is the type of "intent to influence" the statute is aimed at prohibiting under the circumstances here. Moreover, if it were, then it most certainly would not be the same "particular matter" as the Court is not being asked to make a ruling on the NRC's review of the AMAG CROSSFLOW UFM. Instead we are being asked to permit an Amended Complaint to be filed to add additional claims against Westinghouse, to unseal the Talisman Report, and at some point to perhaps rule on a motion to compel Westinghouse to produce certain documents.

Based on the regulation, it appears to the Court that the best argument for Westinghouse is to argue that the Talisman Report is intended to influence the NRC by affecting "action in connection with an issue or aspect of a matter which involves an appreciable element of actual or potential dispute or controversy." 5 C.F.R. § 2641.201(e)(1)(ii). Westinghouse does not make this argument, most likely because it is not persuasive. Such an argument would depend upon the claim that the Talisman Report authors are seeking to disclose the Talisman Report to the NRC, an act that is not necessary to the instant litigation. How the Court rules on Caldon's motion to amend the complaint or a potential motion to compel discovery does not depend on the fact that the Talisman Report authors want to release the information to the NRC.

The only reason that the Talisman Report authors desire to disclose the Report to the NRC concerns the Court at all is because of the fact that the Talisman Report is under a Court Seal. In that sense, disclosing the Report is tangential to the matters in dispute in the litigation. If the report was not sealed the authors would be free to disclose the information so long as it does not conflict with their relationship with Caldon. Thus, if we assume that the authors dropped the request seeking to release the information to the NRC, would Westinghouse similarly drop its

20

demand to strike the Talisman Report? We think not as it is clear that Westinghouse's concern is for itself, not the NRC. Moreover, the authors' intent in wanting to disclose the information to the NRC appears to be solely motivated by a duty to the public.

## 2. Specific Parties

Westinghouse argues that "specific parties" were involved "both at the time the individual participated as a government employee and at the time the former government employee makes the communication to the United States." Def. Br. 13, citing 5 C.F.R. § 2641.201(h)(3). Westinghouse identifies the specific parties as AMAG, Westinghouse, and Caldon (aided by Talisman). Notably absent from Westinghouse's specified list of "specific parties" is the NRC. The NRC is not a party to this lawsuit and is not involved in the Talisman Report or the review of documents that were never before the NRC at the time of the NRC's review. The absence of case law in this area combined with the lack of certainty in the statute and regulations certainly leaves open the possibility that the "specific party" requirement can be met without the government agency being involved in the later proceeding. However, it appears to us that in this case it is doubtful section 207(a)(1) applies without the NRC's involvement.

In EEOC v. Exxon, the Court's analysis was brief, but in finding that the Valdez settlement and the current lawsuit pitting the EEOC against Exxon qualified as the same "particular matter" the Fifth Circuit Court of Appeals stated that both "matters involve the federal government and Exxon, and each deals with Exxon's substance abuse policy." Exxon, 202 F.3d at 757. To the extent that the Exxon case is persuasive, it cuts against Westinghouse as the Exxon Court specifically found that the same specific parties were involved in both matters.

Finally, even if we were to have found that subsection (a)(1) applied to the former NRC employees it seems clear that the Talisman Report authors would be permitted to testify as a fact

21

witness to facts of which they had firsthand knowledge and also offer fact and lay opinion testimony based on their review of the documents in this case under section 207(j)(6). Goodeagle, 2010 WL 3081520, *2-*5.

## IV.    Conclusion

As discussed above, we conclude that the Talisman Report does not violate section 207(a)(1). We find the fact that the NRC itself sees no violation of section 207(a)(1) here to be highly persuasive. In addition, the circumstances of this case do not otherwise fit within the requirements of the statute. Significantly, the NRC is not a party to this case and is not seeking to prohibit the Talisman Report. Accordingly, we will deny Westinghouse's motion to strike.

AND NOW, to-wit, this _14ᵗʰ_ day of _June_____, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Westinghouse Electric Company LLC's Motion to Strike the Talisman Report (ECF No. 206) be and hereby is DENIED.


Maurice B. Cohill, Jr.,
Senior United States District Court Judge