IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOCA COMPANY, as successor to Caldon Company Limited Partnership,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>WESTINGHOUSE ELECTRIC COMPANY, LLC, and ADVANCED MEASUREMENT & ANALYSIS GROUP, INC.<br><br>Defendants and Counterclaim Plaintiffs. | Civil No. 04-1951 |

## OPINION AND ORDER ON MOTION TO DISQUALIFY

Plaintiff DOCA Company (successor to Caldon Company Limited Partnership) originally filed this action on December 29, 2004. The lawsuit was filed in the name of Caldon, Inc., but on November 15, 2010, we granted Caldon's Order to Substitute DOCA Company as the real party in interest. Because the parties continue to refer to Plaintiff as "Caldon" we will too.

Throughout this lawsuit Caldon has continuously been represented by the law firm of Picadio Sneath Miller & Norton, P.C. Defendant Westinghouse Electric Company, LLC has been represented by the law firm K&L Gates LLP. Defendant Advanced Measurement & Analysis Group, Inc. ("AMAG") has been represented by the law firm of Smith, Cohen & Mork up until July 30, 2012, at which time we granted counsels' motions to withdraw.

It is no secret that throughout this litigation counsel for Westinghouse and counsel for AMAG have worked closely together and cooperated extensively, with counsel for Westinghouse taking the lead. Westinghouse filed seven separate motions for summary

judgments with supporting briefs, statements of fact, and appendices of exhibits. AMAG filed motions adopting Westinghouse's motions, briefs, statements of fact, and appendices of exhibits in full. *See* ECF Nos. 315-321. In its Omnibus Reply Brief, AMAG adopted in full the arguments in Westinghouse's Reply Briefs as to all but one of the motions, in which AMAG set forth alleged factual averments of record pertaining to AMAG and directly responsive to Caldon's claim to the contrary. ECF No. 351. The essential briefing on the motions for summary judgment was completed by April 30, 2012.

On May 22, 2012, the law firm of Pietragallo, Bosick & Gordon entered an appearance on behalf of AMAG. Specifically, the attorneys for AMAG are now William Pietragallo, II, Jeanette H. Ho, and Peter S. Wolff.

On September 13, 2012, Caldon filed a Motion to Disqualify Counsel William Pietragallo, II, Jeanette H. Ho, Peter S. Wolff and the Law Firm of Pietragallo Gordon Alfano Bosick & Raspanti LLP as Counsel for Defendant AMAG. ECF No. 375. Caldon also filed a Brief in Support of its motion, as well as supporting exhibits and affidavits. ECF Nos. 376, 377, 378.

Counsel for AMAG filed a Brief in Opposition, along with supporting exhibits and affidavits. ECF Nos. 385, 386. Caldon submitted a Reply Brief with affidavit and exhibits (ECF Nos. 387, 388), and counsel for AMAG filed a Sur-Reply Brief. ECF No. 389. In addition, Westinghouse filed its own Response to Caldon's Reply Brief. ECF No. 390. Finally, counsel for AMAG filed a motion for oral argument. ECF No. 391.

Caldon moves to disqualify AMAG's counsel because Caldon representatives had previously met the Pietragallo law firm to discuss the possibility of the firm representing Caldon in a potential lawsuit against Westinghouse and AMAG based on the same facts and conduct

alleged by Caldon in this case. Specifically, on September 16, 2004, Cal Hastings, Ernie Hauser, Herb Estrada, and Joseph Calihan of Caldon met with attorneys William Pietragallo and Alan Towner. During this meeting Caldon representatives freely discussed their views regarding potential claims, disclosed facts and information in confidence concerning the claims, the strengths and weaknesses of the potential claims, and potential defenses. During the meeting Mr. Towner took ten pages of handwritten notes and Mr. Pietragallo took six pages of handwritten notes. Caldon also delivered to the attorneys 34 separate documents, at least six of which were confidential written communications between Caldon and its lawyers discussing various aspects of Caldon's potential claims against the Defendant.

On October 5, 2004, the Pietragallo law firm declined to represent Caldon. Caldon then retained its present counsel and filed this lawsuit on December 29, 2004.

The Pietragallo law firm retained the documents and the attorneys' handwritten notes. After the Pietragallo counsel entered their appearance on behalf of AMAG in this case, the documents Caldon had given to Pietragallo in 2004 were given to William Wycoff, Esquire, who was retained by the Pietragallo law firm to represent them in this limited motion to disqualify. Mr. Wycoff made the file available to counsel for Caldon. Counsel for Caldon avers that the file contains confidential information that could be significantly harmful to Caldon if disclosed to Defendants.

The Pietragallo law firm and its attorneys oppose disqualification for several reasons. Mr. Pietragallo has no memory of what was discussed during the meeting with Caldon, no recollection of being given documents by Caldon, and no recollection as to whether he ever reviewed the documents. Corrected Affidavit of William Pietragallo, II, September 2, 2012. In addition, attorney Alan Towner, who was also at the meeting with Caldon representatives, and

who billed 6.5 hours related to reviewing the documents, has been screened though a Chinese wall from this litigation. Finally, the Pietragallo law firm and its attorneys argue that disqualification is unwarranted in this case because Caldon cannot demonstrate how any of the documents or information provided by Caldon to the Pietragallo law firm could be "significantly harmful" to Caldon in this litigation pursuant to Pennsylvania Rule of Professional Conduct 1.18, Duties towards Prospective Clients.

We agree with the Pietragallo law firm and its attorneys that disqualification is not warranted in this case. The United States Court of Appeals for the Third Circuit instructs that a district court "may disqualify an attorney only when 'disqualification is an appropriate means of enforcing the applicable disciplinary rule,' keeping in mind 'any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.'" Jackson v. Rohm & Haas Co., 366 F. Appx. 342, 347 (3d Cir.2010) (quoting United States v. Miller, 624 F.2d 1198, 1201 (3d Cir.1980)); *see also* Sauer Inc. v. Honeywell Bldg. Solutions SES Corp., 2012 WL 364050, *2 (W.D.Pa. Feb. 2, 2012). The applicable rule here is Pennsylvania Rule of Professional Conduct 1.18, Duties towards Prospective Clients, which states as follows:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information which may be significantly harmful to that person learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that

>   lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
>
> (d) When a lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>   (1) both the affected client and the prospective client have given informed consent, or;
>   (2) all of the following apply:
>     (i) the disqualified lawyer took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client;
>     (ii) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>     (iii) written notice is promptly given to the prospective client.

Pa.R.Prof.Conduct 1.18.

The disagreement over whether disqualification is warranted in this case primarily revolves around whether some of the documents Caldon disclosed during the meeting with the Pietragallo law firm constitutes "information . . . that could be significantly harmful" to Caldon in this litigation. There is no dispute that nearly all the information and documents transmitted from Caldon to Pietragallo during the September 2004 meeting, as well as the handwritten notes of counsel, are at this point in the litigation either irrelevant or have already been disclosed at some point during the past eight years. Such information could not be significantly harmful to Caldon.

That leaves six attorney-client privileged documents Caldon submitted during the September 2004 meeting as material that may be significantly harmful to Caldon. Three of the documents, however, could not be significantly harmful as two of the documents refer to unrelated patent matters and the other is a list of documents given to one of Caldon's counsel. Declaration of Anthony P. Picadio, September 13, 2012, ¶ 16d-f.

What remains are three documents provided by Caldon to Pietragallo that are protected by the attorney-client privilege. Declaration of Anthony P. Picadio, ¶ 16a-c. These documents are: (1) a memo dated November 20, 1998, prepared by Caldon for its counsel discussing possibility of predatory practices by ABB (Westinghouse's predecessor) against Caldon; (2) Memo dated December 4, 1998, from Caldon's counsel, Eckert Seamans, summarizing possible actions against ABB based in part on information in the memo of November 20, 1998; and (3) Letter dated February 15, 2000 from Winston & Strawn, Caldon's regulatory counsel, to Caldon addressing certain issues relating to Caldon's participation in NRC proceedings involving ABB's CROSSFLOW Topical Report.

Caldon asserts that the two 1998 documents are "relevant to the statute of limitations defense asserted by the Defendants and 'could be' significantly harmful" to Caldon in this litigation. Caldon Reply, at 4-5. Discovery in this case is closed. Westinghouse and AMAG have filed their motions for summary judgment, some of which address statute of limitations arguments. All briefing on these motions is closed. The Pietragallo law firm and its attorneys were not representing AMAG during this phase of the litigation. To the extent the 1998 documents are privileged they are not a part of this litigation. Moreover, Mr. Pietragallo the only attorney representing AMAG that was present at the September 2004 meeting has no memory of the meeting and no memory of the documents Caldon turned over at the meeting. Under these circumstances we fail to see how Caldon could be significantly harmed as a result of the disclosure of the 1998 documents in September 2004 to an attorney who does not recollect the documents in a case that is awaiting the Court's resolution of motions for summary judgment.

With regard to the February 15, 2000 letter addressing issues relating to Caldon's participation in NRC proceedings involving ABB's CROSSFLOW Topical Report, the

Pietragallo firm explains in detail in its Opposition Brief how Caldon's contacts with the NRC regarding the Topical Report has also been the subject of extensive discovery in this case . . . ." Br. Opp. 17-20. It concludes that "[a]ny information relevant to this litigation contained within the February 15, 2000 letter has been thoroughly discovered through the course of this litigation." Id. at 20. In its Reply Brief, Caldon's only response (other than to assert that the Letter is a protected attorney-client communication) is to assert that this letter "is identified in the DiSalle letter in a way which could be harmful to the Plaintiff." Caldon Reply, 5. Given the extensive discovery in this case in conjunction with the fact that Mr. Pietragallo has no recollection of this document we conclude that the February 15, 2000 is not information that could be significantly harmful to Caldon

Notwithstanding Rule 1.18, Caldon also emphasizes the importance of avoiding the appearance of impropriety and maintaining public confidence in the legal profession. In its Reply Brief, Caldon concludes "that to permit Pietragallo to represent Caldon's adversary is to create an impression that a prospective client's confidential communications to a lawyer are not safe and lawyers cannot be trusted with such information." Caldon Reply, at 8. We understand Caldon's concerns but are confident that the facts in this case will not lead to such negative impressions.

Most significantly we have found that there is no danger that Caldon will suffer significant harm based on the information and documents disclosed during the September 2004 meeting. We did not make this finding in a vacuum. The basis for the motion is a relatively short meeting that occurred over eight years ago. In the intervening eight years this case has involved the exchange of millions of documents and the parties have engaged in numerous lengthy depositions of Caldon officials. After motions for summary judgment have been fully

briefed, only then did the Pietragallo law firm enter its appearance on behalf of AMAG. If this case is not resolved on the motions for summary judgment, the Court's next step in the normal course of a case is to proceed to trial. Thus, from an outside perspective the retention of the Pietragallo firm at this stage appears to be in anticipation of this case moving from the discovery and dispositive motion stage to trial. Finally, there is also the fact that Mr. Pietragallo has no recollection of what information was exchanged during the September 2004 meeting and no recollection of Caldon's documents.

On the outside chance that the Defendants in this case suddenly attempt to use a protected document or information against Caldon that could only have been disclosed to the Pietragallo law firm in the September 2004 meeting then defense counsel risks the Court, *sua sponte*, imposing Rule 11 sanctions and other penalties, including the inability to use or rely on such information in this litigation. To that extent, Caldon is free to request such sanctions should defense counsel engage in such egregious behavior.

Accordingly, we will deny Caldon's motion to disqualify.

AND NOW, to-wit, this ___20th___ day of November, 2012, it is hereby ORDERED, ADJUDGED and DECREED that Caldon's Motion to Disqualify (ECF No. 375) be and hereby is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Oral Argument (ECF No. 391) is DENIED as moot.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.,
Senior United States District Court Judge